# DECISIONS

#### OF THE

# SUPREME COURT OF THE STATE OF TEXAS,

## AT ITS DECEMBER TERM, 1848.

---

### Wm. J. & M. W. Stampers vs. James F. Johnson — Error from Travis County.

Parol evidence is admissible to control the clear import of a deed absolute on its face, and to show that it was intended as a mortgage; parol evidence is also admissible to show, or explain, the real intention and purpose of the parties to a deed. [*Post*, 119; 5 Tex. 93; 6 Tex. 294; 8 Tex. 191; 22 Tex. 202.]

These principles are not in conflict with the rule that parol evidence is not admissible to contradict or vary a written agreement; the proof is not to vary or contradict, but to explain what was meant by the parties to the agreement.

If the circumstances show that a deed was given as a security for the payment of money, it will be treated as a mortgage, no matter what the terms may be in which it is written.

Taking *collateral* security of a higher nature is not a merger of the original debt, and does not preclude the creditor from waiving the security, and proceeding against the debtor on his original contract. [8 Tex. 66.]

To constitute a merger, the higher security must be taken in *satisfaction* of the simple contract debt, and not as *collateral* to it.

This suit was brought by the defendant in error to recover of the plaintiffs in error $200, alleged to have been money loaned.

The petition is, in form, a common law *count* for money loaned.

The defendants answered by a general denial; and the defendant, William, further answered, specially traversing the averment of a loan, and alleging that he had sold and delivered

to the plaintiff, at the time specified, a negro man for the amount sued for; and at the same time had received from the plaintiff a writing, which he exhibits, reserving to him the right to re-purchase the negro. The answer concludes with the further averment, that " the plaintiff hath a written and higher evidence of his claim than the one declared on."

It appears, from the statement of facts, that, at the time alleged in the petition, the plaintiff loaned to the defendants $200, and that one of the latter (William) executed to him what purported to be a bill of sale of a negro man, upon consideration of $300, and received in turn the defeasance referred to in the answer, by which the plaintiff agreed to re-convey the negro at the expiration of five months upon the payment of $300; and should the payment be made before that time, to re-convey, and also deduct at the rate of $20 per month for so much of the five months as should not have elapsed at the time of payment.

It was in proof that there were no other writings passed between the parties; that the plaintiff refused to loan the money without the bill of sale, and that it was given to secure the payment; that the negro never was delivered, but remained in possession of the defendant, William, and died in his possession shortly thereafter; that at the time of the execution of the writings, the plaintiff asked who was to bear the loss if the negro should die; and the defendant, William, answered that it should be his loss, for he would not take $1,000 for the boy; that the defendant was to pay the plaintiff $20 per month for the negro, and that if the defendants returned the money in less than five months, the plaintiff was to deduct $20 per month for the unexpired time and re-convey the negro; and that the defendant, William, had subsequently proffered to pay his proportion if the plaintiff would release him from further liability.

The case was submitted to the court, a jury being waived, and the plaintiff had judgment, to reverse which the defendants prosecuted this writ of error.

GILLESPIE for plaintiffs in error.

WEBB for defendant in error.

Mr. Justice WHEELER, after stating the facts, delivered the opinion of the court, Mr. Justice LIPSCOMB not sitting.

For the plaintiffs in error, it is insisted, in effect, that the contract between the parties was evidenced by writing, and that the writing should have been declared on as the foundation of the action; that if not an absolute sale, it was a mortgage, and should have been proceeded upon as such; that the written contract having been made with one, the action will not lie against two; and that the loan having been evidenced only by parol, was merged in the written contract, and no action upon it can be maintained.

In so far as objection is taken to the *form* of stating the cause of action, it certainly is not well founded. The plaintiff did not rely upon the writing as furnishing the evidence of his right of action, but solely upon the parol contract of loan. That appears to have been described and set forth truly, according to the facts as disclosed in evidence. It cannot be a serious objection to the maintaining of the action, that an accurate description of the plaintiffs' case has caused the petition to assume a common law form, when that form is appropriate to the facts which constitute the cause of action. The questions presented by the record, and in argument, seem to be —

1st. Was the transaction which is the subject of controversy, in effect, a loan of money with a mortgage security? and was parol evidence admissible to control the import of the bill of sale, to connect with it the defeasance, and to show that, though absolute on its face, it was intended as a mortgage? and if so,

2d. Does it establish that to have been the character of the instrument?

3d. If a mortgage, could the plaintiff waive his remedy upon the mortgage, and proceed for his debt upon the parol contract?

1. Upon the first question here presented, there are numerous authorities, which establish beyond question that parol evidence is admissible to control the clear import of an absolute deed; and to show that the deed, though absolute on its face,

was intended as a mortgage [4 Kent's Com. 142]; and to the same effect, that parol evidence will be admitted to show, or explain, the real intention and purpose of the parties. [1 Powell on Mort. 125, n. P.; 4 Johns. Ch. R. 167; 1 Wend. 433; 14 id. 63; 10 Yerger, 376; 2 Cow. 324; 3 Atk. 385; 1 Johns. Ch. R. 594; 1 Day, 139; 1 Monroe, 73.] And this, it is said, does not conflict with the rule that parol evidence is not admissible to contradict or vary a written agreement; "for, in such cases, the proof offered is not considered as a variation of the agreement, but explanatory only of what it was meant to have been." [1 Powell on Mort. 151 a.]

2. The character of the instrument must be determined by the actual intention of the parties.

This, indeed, is implied in the first proposition; for it can only be material to admit proof of the actual intention and purpose of the parties, in order that that intention may become the rule of decision, and the authorities are explicit.

" In equity (says Kent), the character of the conveyance is determined by the clear and certain intention of the parties " [4 Kent's Com. 142]; and accordingly, "a deed absolute on the face of it, and though registered as a deed, will be valid and effectual as a mortgage, as between the parties, if it was intended by them to be merely a security for a debt." [*Ibid;* 4 Leigh, 266.]

The inquiry in every case, in order to ascertain whether the transaction amounts to a mortgage or not, must be whether the contract in the specific case is a security for the payment of money? If it be, a court of equity will treat it as a mortgage [7 Cranch, 218; 2 Call, 354; 2 Root, 279]; and in the absence of direct and positive evidence of the real intention and purpose of the parties, recourse will be had to the attendant circumstances of the transaction, for the determination of the inquiry. It will not depend much on the form of the conveyance [7 Cranch, 218]; for equity considers the real and substantial contract, without attending to matters of form. Inadequacy of price, weakness of the party conveying, his necessitous circum-

stances, conversations respecting a loan, or the payment of a debt — the grantor remaining in possession, or the grantee accounting for the rents and profits — and the conduct of the parties, are all circumstances more or less important in doubtful cases. [*Ibid.*] Two persons, it is said, may make a contract for the purchase and sale of property defeasible by the payment of money at a future day; or, in other words, may make a sale with a reservation to the vendor of a right to repurchase the property at a fixed price and specified time. But as efforts are frequently made, by lenders of money, to take advantage of the necessities of the borrower in order to obtain unjust advantages, the leaning of courts of equity, in such cases, is against them; and doubtful cases are generally declared to be mortgages. [*Ibid;* 4 Kent, 144, n. a. (3d ed.); 1 Yeates, 179; 4 Hayw. 93; 1 Wash. 125; 2 Dess. 571.]

A stipulation in the deed itself, or in any separate deed, executed at the same time and constituting with it one transaction, that the property shall be re-conveyed upon the payment of money, or the performance of other conditions, constitutes a defeasance; and such conveyance will be considered and treated in all respects as a mortgage [2 Mass. R. 499; 5 id. 109; 8 id. 159; 12 id. 456; 5 Pick. 181]; and this, though unaccompanied by any personal security for the payment of the money, or the performance of the other conditions. [4 Pick. 349; 13 id. 411–415; 14 id. 467; 4 Johns. R. 186.]

We are left in no uncertainty as to the real character of the transaction, and the actual intention of the parties, in the present instance. The evidence is positive, that it was a loan of money; and that the bill of sale was given, and intended, as a security for the debt.

Applying the principles just stated to the case before us, there can be no doubt, we think, that the bill of sale, though absolute on its face, must be regarded as a mortgage; and it does not alter the case, that the personal liability of the mortgagor was not sought to be secured by a note, or other written evidence of the debt. "The absence of any bond or covenant

to pay the money will not make the instrument less effectual as a mortgage." [4 Kent's Com. 145; 5 Binney, 499.]

3. It remains to inquire whether the plaintiff could waive his remedy upon the mortgage, and proceed upon the parol contract to recover the money loaned.

His right to do so is resisted upon the ground that the parol contract debt is merged in the mortgage.

It doubtless is a well settled rule of the common law, that where a bond or other security, under seal or of record, has been accepted in *satisfaction* of a simple contract, the latter is merged in such higher security, and assumpsit cannot in general be maintained [3 East, 259], but the action must be debt or covenant; that is, an action will lie upon the simple contract, but resort must be had to the higher security, in a form of action appropriate to the case. But taking a *collateral* security of a higher nature does not preclude the creditor from suing the original debtor in assumpsit, on the first contract [6 T. R. 176–7]; for, in that case, the simple contract is not merged in the higher security. It is of the essence of a mortgage that it be not given in *satisfaction*, but as a security, for the payment of a debt. [1 Powell on Mort. 4, n. B.]

It has been held that a mortgage given as a security for a simple contract debt, though it contain a stipulation against personal liability on the mortgage, does not operate as a payment of the debt, nor discharge the mortgagor from personal liability for it. [7 Cowen, 662.]

In Hatch *vs.* White [2 Gallis. R. 182], the court say: "A mortgage is but a mere security for the debt and collateral to it. The debt has an independent existence, and remains with all its original validity, notwithstanding a release of the mortgage."

In Wharf *vs.* Howell [5 Binney, 499], where a mortgage had been executed to secure the payment of $200 loaned to the mortgagor, and no obligation was taken for the payment of the money, it was held that the lender might recover the money due.

In Hart *vs.* Burton [7 J. J. Marsh. 322], where the plaintiff,

having loaned to the defendant a sum of money to secure the payment, had taken a mortgage upon a negro, and the negro died, it was held that the mortgagee could maintain an action to recover back the money loaned. [See, also, 4 Pike, 349; Yelverton, 179, n. 1, Am. ed.; 2 Kent, 579; 4 id. 183, 193.]

The conclusion deducible from the authorities is, that the plaintiff had his remedy by action upon the personal liability of the defendants, for the money loaned, without regard to the mortgage.

The loan was obtained by the defendants, jointly. They became jointly liable, therefore, for the debt; and their liability is not impaired or affected by the consideration that one of them executed a mortgage to secure the payment. The mortgage security, though doubtless the inducement to the lender to advance the money, was nevertheless collateral to the debt. The latter was the principal — the former, the incident.

We are of opinion, therefore, that the action was well brought; that there is no error in the judgment; and that it be affirmed.