JEREMIAH GRAY v. MRS. FANNIE SHELBY.

No. 3176.

1. **Married Woman Contradicting Certificate of Acknowledgment.**—A deed was executed by husband and wife. The certificate of privy acknowledgment was in due form. After her husband's death, in a controversy with the vendee named in the deed, it was incompetent for the wife (widow) to testify to her secret, undisclosed intentions in signing the deed, contradicting the recitals therein, and which were not known to the vendee.

2. **Mortgage of Homestead.**—See facts where a deed absolute was held to have been intended as a mortgage, and being upon the homestead of the grantors, it was void.

3. **Mortgage—Construction.**—The character of the instrument is to be determined by the intent with which the grantors executed and the grantee received it—i. e., whether a mortgage or a deed absolute. Equity regards the substance, not the form. It matters not what the language used or the form adopted, if it was intended to secure money it must be construed as a mortgage.

4. **Pleading.**—The petition alleging that the deed absolute in form was a mortgage, sufficiently alleged the indebtedness secured by the allegation that the instrument was intended to secure $200, at the time advanced by vendee to the husband of plaintiff.

5. **Same.**—Widow seeking to avoid a deed made by herself and husband for the homestead, alleged that the vendee "knew of the imperfect privy examination." This was sufficient. The means of knowledge were matter of proof.

APPEAL from Jasper. Tried below before Hon. W. H. FORD. The opinion states the case.

*W. W. Blake,* for appellant.—1. The wife can not defeat a conveyance of the homestead by showing that at the time her acknowledgment was taken she did not understand the import of the deed, or that the officer did not properly explain it to her, unless she also show that these facts were brought to the knowledge of the grantee. Miller v. Yturria, 69 Texas, 552; Pool v. Chase, 46 Texas, 210; Williams v. Pouns, 48 Texas, 146; Pierce v. Fort, 60 Texas, 464; Edwards v. Dismukes, 53 Texas, 605.

2. (1) There can be no mortgage in law unless the relation of debtor and creditor exist. The mortgagee must have the right to demand the payment of the money, and the mortgagor must be bound to pay it.

(2) The burden of proof is on the defendant to show the deed to be a mortgage, and in order to establish the fact that a deed absolute on its face is intended as a mortgage, it must be proved with clearness and certainty that all the facts existed that distinguish a mortgage from a sale—that is, some evidence of a debt due and a promise to pay. Otherwise, the intention as expressed on the face of the deed will prevail.

(3) There is no prohibition in our laws against the sale of a homestead. Only pretended sales are prohibited. If this is a mere pretense of

sale, a knowledge of the facts must be brought home to the grantee. Rev. Stats., arts. 551, 560; Alstin v. Cundiff, 52 Texas, 462, 465; Ruffier v. Womack, 30 Texas, 342; Loving v. Milliken, 59 Texas, 425; Gibbs v. Penny, 43 Texas, 561; Miller v. Yturria, 69 Texas, 552; Moreland v. Barnhart, 44 Texas, 283; Cuney v. Dupree, 21 Texas, 219; Grooms v. Rust, 27 Texas, 234; Astugueville v. Loustanau, 61 Texas, 238.

*Seale & Powell*, for appellee.—1. Notwithstanding the form of the conveyance, if it was the intention of the parties that the title was not to vest in the appellant, but the object and intention was to secure him in the payment of the $150 furnished the husband of appellee, then the transaction would amount to a pretended sale involving a defeasance, and would fall under the condemnation of the organic law and render the deed invalid. Const., art. 16, sec. 50; Hardie & Co. v. Campbell, 63 Texas, 292; Loving v. Milliken, 59 Texas, 423; Gibbs v. Penny, 43 Texas, 560; Hudson v. Wilkinson, 45 Texas, 445.

2. That a deed, though absolute on its face, may be shown by reason of the intention of the parties to be a security for debt, and therefore in contemplation of law a mortgage, is so firmly settled as to admit of no question. Mann v. Falcon, 25 Texas, 271; Hudson v. Wilkinson, 45 Texas, 445; Hardie & Co. v. Campbell, 63 Texas, 292; Fowler v. Stoneum, 11 Texas, 478.

TARLTON, JUDGE, *Section B.*—This suit, in trespass to try title, was brought August 5, 1890, in the District Court of Jasper County, by the appellant against the appellee, to recover a tract of 130 acres of land.

The appellant claimed title by virtue of a deed executed to him December 12, 1888, by appellee and her husband M. E. Shelby, deceased, who prior to this conveyance had owned the land since August 9, 1880. The appellee admitted the execution of the deed by herself and husband, but alleged that the instrument, while in form an absolute conveyance, was, as plaintiff well knew, in intent and purpose a mortgage and security for the sum of $200 advanced by plaintiff to defendant's husband; that the land involved was, at the date of the instrument, and had been for years before, the homestead of defendant and her husband M. E. Shelby, deceased; that she signed the instrument on information from her husband that it was only a mortgage; that she was never examined privily and apart from her husband, nor was the instrument explained to her; that the certificate of her acknowledgment attached to the deed is false, and her signature to the instrument thus obtained by imposition and fraud, all of which was well known to plaintiff.

The court on the trial found the deed to be a mortgage upon the homestead, and a nullity, and so adjudged.

The vital question in this case involves the correctness of the court's conclusion that the conveyance in question is a mortgage.

On this subject Mrs. Shelby was permitted by the court to testify, over the objection of appellant, that when she signed the deed in question, "she did not understand it to be a conveyance of her homestead; that she signed it only for the purpose of securing Mr. Gray for the money he let Mr. Shelby have to enable herself and her husband to go to Orange, and that it was the understanding all the time that it was to be a security to Mr. Gray for the money; that one of her reasons for believing that the deed was a mortgage was in the fact that she was not examined privily and apart from her husband, whereas on all previous occasions when she had executed deeds she was so examined."

The admission of this testimony is assigned as error. We think the objection should have been sustained. The secret, undisclosed intention of Mrs. Shelby should not bind Gray, conflicting as it did with the recitals in the certificate, of the falsity of which it is not shown that he had any knowledge. This error will not, however, require a reversal of the judgment, as without this evidence there are facts sufficient to sustain the conclusion that the instrument was in effect a mortgage.

Eliminating the testimony thus improperly admitted, the facts surrounding the transaction are briefly as follows: The land in controversy was at the date of the deed worth from $800 to $1000. It was then and had been for fourteen years the homestead of the defendant and her husband M. E. Shelby. The execution of the deed came about in this way: The defendant desired to go to the town of Orange, that her children might be sent to school, and that her husband might get work. M. E. Shelby, the husband, accordingly went to see Gray, to whom he offered to sell the property for $1000. Gray replied that he did not have the money, his funds being out at interest, but that he had $150 he could let Shelby have, and if Shelby went to Orange and found he wanted to stay down there, he could come back and get the other $850. This conversation occurred in the presence of Ed. Shelby, a witness. After the conversation the three—Gray, Ed. Shelby, and M. E. Shelby—went to Orange, where M. E. Shelby instructed Mr. Rigsby, the county clerk, to come to his house and take acknowledgments. The next day Gray met Rigsby at an appointed place, handed him the money to be delivered to Shelby, and Rigsby proceeded to Shelby's home, paid the money to Shelby, and brought back the deed to Gray. This deed was a warranty deed—such as Gray stated he expected to get. A short time after the execution of the deed Mrs. Shelby and her husband moved to Orange, where he died in November, 1889. In December, after his death, she returned to the place. During her stay at Orange the premises were in the possession of a tenant of M. E. Shelby and his wife, and she collected the rents on her return from

Orange, and resumed the actual possession of the premises. After M. E. Shelby's death, Gray (the plaintiff) stated to Robert Shelby that he wanted only his money back, with interest. The amount paid to Shelby was $150; the consideration recited in the deed is $200.

The court below, sitting as a jury, found that the instrument in question was a mortgage. If there be facts conducing to this conclusion, and justifying it, this court will not disturb the finding. Carter v. Carter, 5 Texas, 101, 102. The character of the instrument is to be determined by the intent with which the grantors executed and the grantee received it. Davis v. Brewster, 59 Texas, 93. Equity regards the substance, not the form. It matters not what the language used or the form imparted to the instrument, if it was intended to secure the payment of money it must be construed as a mortgage. Stampers v. Johnson, 3 Texas, 1. Nor is it necessary that the consideration be a pre-existing indebtedness; it is sufficient if it be a present advance of money. Ruffier v. Womack, 30 Texas, 343. As between a mortgage and a conditional sale, equity will construe the instrument, necessarily the one or the other, as a mortgage, unless violence be thereby done to the intention of the parties. Walker v. McDonald, 49 Texas, 463. And in order to ascertain the proper construction of the instrument, equity will look at the acts and declarations of the parties and the circumstances attending the transaction and to those preceding it and subsequent to it. Carter v. Carter, 5 Texas, 101, 102; Loving v. Milliken, 59 Texas, 425.

If the purpose of the instrument be to secure the payment of money advanced, the relation of debtor and creditor still existing, it is a mortgage. If its purpose be to pass the title, with the right reserved in the vendor to repurchase the property for a fixed price and at a specified time, it is a conditional sale. Fowler v. Stoneum, 11 Texas, 507. The agreement as to the time in which the right to repurchase is to be exerted is one of the elements of a conditional sale. Clark v. Haney, 62 Texas, 514. And if this right be not exerted at the time specified, the condition fails and the title vests absolutely in the vendee. Fowler v. Stoneum, supra.

Applying these principles to the facts stated, was the court authorized in finding the instrument to be a mortgage? It can not be reasonably contended that the purpose of the instrument was to pass the title unconditionally to Gray. No such extraordinary emergency is here shown as would require or justify Shelby as a sane man to convey his homestead, worth $800 or $1000, for $150. Was it a conditional sale? A sale, whether absolute or conditional, implies the existence of a purchase price. In the former case, an absolute purchase price; in the latter, a purchase price with the condition that the vendor may repurchase. The argument arising from the consideration of the inadequacy of price with reference to the question of an absolute sale applies

also, though not so forcibly, to the question of a conditional sale. Besides, there is no evidence here of an agreement to repurchase at a fixed time or for a specified price. The elements of a conditional sale were thus wanting in the transaction.

On the other hand, the features of the mortgage are clearly discernible. The sum really paid by Gray was $150; the consideration recited in the deed is $200. The difference is suggestive of interest. The inadequacy of the consideration; the conversation in which it was stated that Gray could let Shelby have $150; the fact that possession remained with the alleged vendors; the subsequent statement by Gray that he wanted only his money and interest—all indicate that the sum received by Shelby was an advance made by Gray, creating a debt which continued to exist, and which was sought to be secured by the instrument executed. The circumstances enumerated are all to be considered in arriving at the intention of the parties in the execution and receipt of the instrument. Stampers v. Johnson, 3 Texas, 1; Gibbs v. Penny, 43 Texas, 560; Loving v. Milliken, 59 Texas, 425.

The conclusion of the court that the instrument was a mortgage will not be disturbed.

The appellant complains of the action of the court in overruling two special exceptions; the first alleging a defect in the petition, in that it failed to aver that any debt was created which was to be secured; the second charging a defect in the failure to state the manner of plaintiff's complicity or connection with the fraud and imposition alleged to have been perpetrated upon defendant.

As to the first exception: The petition alleges, in effect, that the true object and intent of the instrument was that it should be a mortgage, and should stand as security for the sum of $200 advanced to the husband in consideration of its execution. A present advance of money is, as we have already pointed out, a sufficient basis for a mortgage and indicates the existence of a debt.

As to the second exception: The petition charged the imposition and fraud practiced upon Mrs. Shelby to consist in the securing of her signature without a privy examination or an explanation of the instrument, and it further charged that the plaintiff knew of the fraud and imposition. It was not necessary that it should charge the manner in which plaintiff acquired the knowledge. Besides, it is proper to state that any error committed by the court with reference to this issue of fraud and imposition became immaterial, as the court's judgment is founded alone upon the fact that the instrument was a mortgage. Both exceptions were properly overruled. The plaintiff sought to prove by himself the character of the agreement, understanding, and transaction had between himself and M. E. Shelby, deceased. The court sustained an objection to the evidence offered, on the ground that the plaintiff should not be permitted to testify to statements by or transactions with

the deceased. The testimony was inadmissible under article 2248, Revised Statutes.

The testimony of Ed. Shelby with reference to the conversation between M. E. Shelby and Gray, already detailed, was objected to by appellant as irrelevant and immaterial, and the admission of the evidence is assigned as error.

We have already cited authorities showing the pertinence of conversations, transactions, and circumstances preceding the execution of the instrument the character of which is the subject of inquiry. The objection was properly overruled.

We recommend that the judgment be affirmed.

*Affirmed.*