

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom C. King
State Auditor
State Capitol
Austin, Texas

Dear Sir:

Opinion No. C-656
Re: Real estate transaction en-
tered into by a state teachers
college, which this opinion,
based upon certain assumptions,
construes to be a mortgage and
which holds that college got
equitable title, of which it
could not be divested by a for-
feiture clause in declaration of
trust.

We have your letter of November 7, 1939, which we
quote in full in order that this opinion will reflect all
the facts:

"In connection with the current annual audit
of the accounts of one of the State Teachers'
Colleges of Texas, the following facts relating
to a real estate transaction appeared:

"On July 20, 1939, F. C. Oates conveyed some
land to S. M. Sewell (a member of the College's
faculty) by a deed in regular form, properly ac-
knowledged but unrecorded, which recited 'for
and in consideration of the sum of Seven Hundred
Dollars ($700.00), to us in hand paid by S. M.
Sewell, and for other good, valuable and suffi-
cient consideration . . .'

"On July 24, 1939, S. M. Sewell executed an
instrument which referred to the above deed, and
continued:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"'As a matter of fact, $700.00 of the consideration for said conveyance was paid in cash by said S. M. Sewell, and the remainder of the consideration was paid in personal property by the . . College, . . . .

"' Now, I, S. M. Sewell, . . . ., grantee in the deed above referred to, do now hereby state and declare that I hold said property in trust for the use and benefit of said College, and that of the consideration for said property, I paid the sum of $700.00 in cash, and said College the remainder and said property was conveyed to me with the following agreement and understanding between me and said College;

"'(1) If and when, at any time within 2 years from date hereof, said College pays to me the sum of $700.00 in cash, together with interest thereon from this date until paid at the rate of 6% per annum, then I will immediately, at the request of the proper officials of said College, or of the Board of Directors of the State Teachers' Colleges of Texas, convey said property, together with the improvements thereon, to the State of Texas, for the use and benefit of said College, or to any other grantee indicated, such conveyance to be in the form of a special warranty deed, and my wife, if living, will join me in the execution thereof, if requested by the parties above mentioned.

"' . . . .

"'(4) If at the end of 2 years from date hereof said College has failed to redeem said property by paying me the sum of $700.00 and interest, as above specified, then, at my option, it is to forfeit all right or interest in said property, together with the improvements then situated thereon, and the full and absolute title will then vest in me.'

"The instrument is signed by S. M. Sewell only, and is not acknowledged or recorded.

"The College, by its president, signed this notation at the foot of the instrument:

"'The terms and provisions of the above and foregoing trust agreement are accepted.'

"The personal property referred to as the part of the consideration paid by the College consisted of a house on College property, which was then torn down and moved away. This house was valued on the books of the College at $1,500, and a house appraised at the same value was, and still is, located on the new property, the subject of the instruments above referred to. The books of the College reflect that the transaction was regarded as an exchange of the one house to be removed for the other to remain standing.

"Your opinion on the following questions is respectfully requested:

"(1) As of August 31, 1939, what was the nature of the interest of the college in this property?

"(2) What would be the effect of a failure on the part of the college to make any payment to S. M. Sewell within two years from July 24, 1939?

"For the purposes of this inquiry you may assume such facts, not detailed, as are necessary, I have related herein the substance of all the information I have. It will be helpful, however, if you will state the assumptions you make."

We will not go into the question of the <u>authority</u> of the Board of Regents to enter into such a transaction as outlined in your letter, inasmuch as you did not specifically ask that question, and as it is not required in order to answer your questions. As we understand your second question, what you really want to know is, would paragraph (4) of Sewell's declaration of trust become operative upon the college's failing to repay him within two years from July 24, 1939; that is, would there be an automatic forfeiture of the college's title? For the purpose of this opinion and as suggested by you, we will make some <u>assumptions, one being</u> that the Board had authority to

enter into and consummate the transaction in the manner described by you and as if it were one between natural persons.

Looking at the transaction as a whole, as we are compelled to do under the applicable rules of construction, it appears that the college merely borrowed $700.00 from Sewell. There is no indication that Sewell purposed to acquire any interest in the property for himself, but to the contrary, the contents of his declaration of trust support the conclusion that the transaction was entirely for the benefit of the college and that all Sewell expected was security for repayment of his $700.00. Without discussing the many reasons to support this conclusion, we will assume that Sewell merely intended to lend the college $700.00.

Then, if our assumption be true, and further assuming that the Board had authority to borrow money in this manner, the college became indebted to Sewell in the amount of $700.00. Whether or not this was a "debt" within the purview of, and prohibited by, Section 49, Article 3 of the Constitution of Texas, we will not pass on as it is not necessary to the determination of the questions submitted.

Having determined that the intention of the parties to this transaction was that the college become indebted to Sewell, then it is to be construed as one where the college paid all of the consideration for the property, but took title in Sewell's name. Applying the law to this construction of the facts set out in Sewell's declaration of trust, the college became the sole beneficiary of a resulting trust, with Sewell holding the property as trustee for the college -- with the entire equitable title being vested in the college. The Supreme Court of Texas announced this rule in McCoy v. Crawford, 9 Tex. 353, and approved it in Hix v. Armstrong, 101 Tex. 271, 106 S. W. 317, as follows:

"'Where one buys land with the money of another and takes the deed in his own name, a trust results in favor of the person whose money was employed in making the purchase. The latter is the equitable owner of the land, and the purchaser is a mere trustee and holds for the benefit of him who paid the purchase money.'" See also, 42 Tex. Juris, at p. 637.

The college is also the holder of the entire equit-

able title to the property in Sewell's hands under the declaration of trust, executed by Sewell subsequent to the execution of the deed from Oates to Sewell, but under an agreement which we construe to have taken place simultaneously with the execution of the deed. Samuell v. Brooks (Civ. App.) 207 S. W. 626, error refused. Although the trust deed has not been recorded, it is good as between Sewell and the college. Vernon's Revised Civil Statutes, 1925, Article 6627.

As previously stated, viewing the transaction as a whole, it appears that in taking title to the property, Sewell's sole purpose was to secure repayment of his $700.00. Therefore, the deed to Sewell was nothing more than a mortgage and must be so construed. The Supreme Court has so held in numerous cases and states the rule as follows:

"It matters not what the language used or the form imparted to the instrument; if it was intended to secure the payment of money, it must be construed as a mortgage." Stamper v. Johnson, 3 Tex. 1; Gray v. Shelby, 83 Tex. 405, 18 S. W. 809.

Likewise, the courts hold that an instrument in the form of a deed absolute, but executed with a contemporaneous agreement that it is made merely to secure a debt, is a mortgage. Calder v. Ramsey, 66 Tex. 218.

Having held that the deed to Sewell, though absolute, is merely a mortgage, the full equitable title is in the college. To get title out of the college, there would have to be, either a foreclosure by Sewell, or a separate conveyance by the college to Sewell based on a new consideration. Keller v. Kirby, 79 S. W. 82; Luffier v. Womack, 30 Tex. 332. The clause providing for an automatic forfeiture at the option of Sewell, upon the failure of the college to make the payments, would be ineffective to divest the college of the title it acquired, that is equitable title.

Under the assumptions made, it is not necessary to pass on the authority of the Board of Regents or the college to perform the various acts in connection with this transaction. Whether the party to the transaction were a college or an individual, its title could not be automatically divested by a provision in a declaration of trust and at the option of the creditor-trustee, as herein pointed out. By this opinion,

we make no attempt to answer the many questions which might arise out of a law suit between Sewell and the college, upon its failure to pay as provided in the declaration of trust and which declaration was apparently accepted by the college.

Therefore, it is the opinion of this Department and you are so advised that (1) the college got equitable title to the property described in your letter and (2) that its title would not be automatically forfeited by failure to make the payments provided for in Sewell's declaration of trust.

Trusting that this satisfactorily answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

James Noel
Assistant

JN:BPB

APPROVED DEC 16, 1939

GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY B. W. B.
CHAIRMAN

OK
REK