COVE INVESTMENTS, INC., Petitioner,

v.

Clinton MANGES et al., Respondents.

No. B–8929.

Supreme Court of Texas.

June 18, 1980.

Rehearing Denied July 16, 1980.

Smith, McIlheran, Lauderdale & Jones, Garland F. Smith, Weslaco, McGinnis, Lochridge & Kilgore, Lloyd Lochridge, Austin, Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, Morris Atlas, McAllen, for petitioner.

Fulbright & Jaworski, Rufus Wallingford and Daniel K. Hedges, Houston, Arnulfo Guerra and Cornelius Duvall, Roma, Wright & Patton, Larry G. Patton, Houston, for respondents.

1. For convenience, the respondents will sometimes be collectively referred to as "Manges."

SPEARS, Justice.

The question before us is whether the trial court correctly granted motions for summary judgment of respondents Clinton Manges, Helen Ruth Manges, Duval County Ranch Company and the Bank of the Southwest National Association[1] against petitioner Cove Investments, Inc., a corporation wholly owned by Vannie E. Cook, Jr., in a severed portion of a complex, multi-party suit arising from a dispute over the mineral ownership of certain lands in Starr and Jim Hogg counties. The court of civil appeals has affirmed the trial court's summary judgment. 588 S.W.2d 792. We reverse those judgments and remand the cause to the trial court for the resolution of disputed fact issues.

The nature and background of the litigation is correctly stated in the opinion of the court of civil appeals and need not be repeated here. The summary judgment evidence on file reflects that in December of 1968, Manges was attempting to purchase certain lands in Starr and Jim Hogg counties from the V. C. Guerra estate (VCG) and the M. Guerra & Sons partnership (MGS). The partnership was in receivership at that time. Manges was to use $2,000,000 borrowed from Vannie L. Cook to purchase these lands. The oral agreement between Cook and Manges was that in addition to repayment of the $2,000,000, Cook would have an option to purchase one-half of the lands and mineral interests acquired by Manges. On December 10, 1968, Manges executed and delivered to Cook's nominee, Cove Investments, Inc., two mineral deeds to all of the mineral interests in the MGS and VCG lands. Both parties said that the deeds were executed and delivered as a guarantee of Manges' good faith in carrying out his agreement with Cook. The deeds were not immediately recorded. In February 1971, Manges received a deed from the receiver of the MGS partnership for about 40,000 acres of MGS lands including one-half of the mineral rights as well as the executive rights to the entire mineral interest.

On February 25, 1971, Manges and Cook agreed that Cove was to receive, in lieu of the 1968 mineral deeds, the surface estate in 27,000 acres of MGS land and one-half of all the mineral interests which Manges might acquire in both the MGS and VCG lands. Manges executed and delivered to Cove a deed conveying the surface interest in 27,000 acres of MGS land. The next month, on March 18, 1971, Manges executed and delivered to Cove's trustee a deed for all the mineral interest in the MGS lands. This deed was returned to Manges for correction because it should have conveyed one-half of the mineral interest acquired by Manges in both the MGS and VCG lands rather than the mineral interest acquired by Manges in only the MGS lands. Manges refused to execute and deliver a corrected deed, and in August, 1975, after learning that Manges was executing and recording contracts with third parties involving the minerals, treating the minerals as his own, and that drilling was going on on the lands, Cove filed the 1968 deeds with the county clerk.

In affirming the trial court's summary judgment the court of civil appeals observed that the two 1968 deeds were not intended as conveyances of the minerals to Cove but merely to secure Manges' performance of the oral agreement. The court said that this intent can be shown by extrinsic evidence, and held that "[u]nder these circumstances, the two 1968 instruments cannot be given effect as conveyances of the mineral estates described in such deeds." 588 S.W.2d at 794.

Petitioner Cove contends here that the trial court erred in granting the summary judgment because: (1) as a matter of law the two 1968 deeds were intended as present conveyances; (2) alternatively, rather than treating the two 1968 deeds as nullities, Cove was entitled to enforce them for what they were—security for Manges' performance of his agreement—by the imposition of a constructive trust; (3) the Statute of Frauds does not apply because the agreement had been partially performed; and (4) the parol agreement was enforceable under the doctrine of promisso-

ry estoppel. Cove argues that even if these contentions were not established as a matter of law, genuine fact issues that foreclosed summary judgment for Manges were raised by the summary judgment evidence.

Respondents strenuously contend that Cove has waived its constructive trust arguments in the trial court and in the court of civil appeals by consistently arguing that the two 1968 deeds were present conveyances. They cite this court's opinion in *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979), as authority for the proposition that Cove did not raise constructive trust or equitable mortgage as grounds for denying Manges' and bank's motion for summary judgment. We held in *Clear Creek* that in order to raise an affirmative defense or a matter in avoidance to defeat a motion for summary judgment, the non-movant must expressly present the grounds in written motions, written answers, or written responses to the motion. We further held, however, that no response is required when the movant's summary judgment proof is legally insufficient. "The movant still must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law." *Id.* at 678.

The motions for summary judgment of Manges, Mrs. Manges, the Duval Ranch Co., and the bank state that there is no fact issue as to Manges' ownership of the minerals and executive rights in the Guerra land. As grounds for their motions, they assert:

Based upon the admissions in the pleadings on file, the depositions on file, the documentary, as a matter of law, the instruments made a basis of [Cove's] suit and claim for certain Starr County minerals in Guerra lands, do not convey any rights, title or interests in and to Vannie Cook and/or Cove Investments, and Movant is therefore entitled to a partial summary judgment as to this issue(s).

Cove also filed a motion and a supplemental motion for summary judgment, asserting

that the two deeds were effective as present conveyances to secure Manges' good faith performance of his oral promises.

In their affidavits, Cook and Manges differed sharply whether the deeds conveyed any interest in the lands. Vannie E. Cook, Jr. stated in his affidavit in support of Cove's motion for summary judgment:

I was familiar with Mr. Manges' financial condition at the time, because of loans I had made to him. I knew he was not financially able at that time to finance this undertaking and realized he would probably call on me for financial help, if he should be successful in purchasing any of the Guerra lands. By December 10, 1968, he had succeeded in purchasing the Evangelina Guerra lands, the Fred Guerra interests and the interests of J. C. Guerra, V. H. Guerra and Virginia G. Jefferies in the M. Guerra and Sons lands. I was convinced that he was getting good title to land, and, in each purchase, I assisted him in financing the purchase.

To the best of my recollection, prior to December 10, 1968, I had no security at all for such financial assistance, except Mr. Manges' word, and confidence in him, based upon prior experience with him in several real estate deals in which we had been associated. From time to time, when requesting financial assistance, Mr. Manges would express as his intent that, when the Guerra purchases were completed, I would be repaid in full and given the option to purchase one-half of the Guerra lands at his cost. This was never reduced to writing as an agreement, but on or about December 10, 1968, Mr. Manges came to the office of my attorney, F. E. Butler, and asked him to prepare the mineral deeds of that date to Cove Investments, Inc., which he signed and acknowledged before a Notary Public, and delivered them to Cove Investments, Inc., a corporation which Mr. Manges knew was owned one hundred percent by me, to show his good faith and as partial security for advances made and to be made.

Something to show present and future good faith on Manges' part was desirable, if I were to continue this financial assistance to him, and he knew it. Thus, he came up with the two mineral deeds for this purpose.

. . . . .

Up until this time, I felt Mr. Manges was not as concerned with his obligations to me as he should be, and that he was looking for any excuse or reason to try to get out of the mineral obligation. I knew we had the mineral deeds into Cove to secure his obligations and evidence his good faith, but I hoped to get the matter settled without having to resort to them, which I felt would lead to litigation.

. . . . .

On Mr. Smith's advice, the deeds were immediately filed for record and Mr. Smith instructed to file the plea of intervention in the suit then pending between Ruben R. Guerra et al and Manges et al. This was done to enforce my right and title to the minerals which Manges had conveyed to Cove Investments, Inc., on December 10, 1968, to insure his good faith in his ultimate dealings with me in the Guerra matter, which Manges breached by his refusal to consummate the settlement we made after I had paid the full consideration of over $2,200,000 for Las Islas Ranch and minerals.

In his affidavit in support of Cove's petition for injunctive relief against Clinton Manges, Cook further stated:

To guarantee that he would carry out in good faith his agreement with me, he offered two deeds conveying to me or my nominee all minerals acquired and to be acquired by him in MGS and V. C. GUERRA ESTATE lands. I designated COVE INVESTMENTS, INC., a corporation of which I am President and owner of all the stock, and the proposed deeds (Exhibits "A" and "C") were accordingly signed, acknowledged and delivered by MANGES to COVE.

. . . . .

Once MANGES' titles were cleared I began an effort to get MANGES to carry out in good faith his agreement by conveyance to me or my nominee one-half of the minerals he had acquired in MGS and V. C. GUERRA ESTATE lands. MANGES ignored repeated letters and telephone calls which I addressed to him beginning shortly after June 11, 1974. Being finally convinced that MANGES had intentionally violated his good faith and breached his agreement with me, I caused my nominee, COVE INVESTMENTS, INC., to file the two deeds of December 10, 1968, given by MANGES as his guarantee of good faith.

Clinton Manges stated in his affidavit in support of respondents' motions for summary judgment:

Prior to December 10, 1968, I had entered into a joint arrangement and agreement with Vannie E. Cook, Jr. of McAllen, Texas, whereby he and I together were to purchase certain of the Guerra properties that were available for purchase.

.    .    .    .    .

During the course of our joint arrangement Mr. Cook had requested that in some of the conveyances that evidence be made of our joint arrangement by having me simply execute for simplicity, instruments reflecting joint ownership and interest such as the two documents dated December 10, 1968. There was no intent at the time that the two instruments of December 10, 1968 were executed for there to be in fact a transfer. Mr. Cook and I both understood this and had an agreement that as soon as our properties were divided that the two instruments of December 10, 1968 would be returned to me along with any other instruments which I caused to be delivered to him from time to time.

.    .    .    .    .

At the time of the December 10, 1968 instruments, made the basis for Cove Investments' Plea of Intervention and Summary Judgment, Vannie Cook and/or Cove Investments were not to have any interest in and to any acquisitions made in and to the minerals in the Guerra properties in Starr County. The instruments were not intended as deeds and/or any conveyances; they were incomplete; they were not delivered with the understanding that they were to be legally operative; they were not, therefore, filed of record; they were not intended to operate as any character of conveyance from me to Vannie Cook and/or Cove Investments of anything.

■ The issue whether the deeds were given as a guarantee of Manges' performance is raised by Cove's responses to Manges' motion as well as by Cove's own Motion for Summary Judgment. Cove's Second Amended Original Petition alleges its right to recover the entire undivided interest in the minerals "subject to an equitable interest in . . . Manges to one-half of such interest," and alternatively, that if legal title to the minerals "is in [Manges] that such title and possession is encumbered with equitable title in Cove for an undivided one-half interest in said minerals and executive rights." Cove further pleaded that a constructive trust should be imposed on the mineral estates of the Guerra lands. In Cove's Supplemental Motion for Summary Judgment and attached affidavits the contention is made that the two deeds were given as guarantee of the good faith of Manges in performing his agreement. Cove asserts that this contention is not inconsistent with treating the two 1968 deeds as present conveyances.

The summary judgment evidence fails to establish *as a matter of law* that no "rights, title or interests" were conveyed by the two 1968 deeds. The motions, the responses, and the affidavits, when read together, on their face clearly contain sharp conflicts between the two sides that raise a material fact issue: Were the two 1968 deeds intended to be effective as security instruments for Manges' performance of an oral promise to convey minerals to Cove that would give rise to a resulting or constructive trust. As we said in *Clear Creek*, the burden of proof in a summary judgment proceeding does

not shift to the non-movant. To be entitled to its summary judgment the burden was still on Manges to establish his stated grounds—that the deeds were nullities and were ineffectual as a matter of law "to convey any rights, title or interests" to Cook or Cove.

 When parol evidence is admitted to establish a prior or simultaneous oral agreement showing a different purpose for a deed, the courts will determine and give effect to the oral agreement. *See Meadows v. Bierschwale*, 516 S.W.2d 125 (Tex.1974); *Jackson v. Hernandez*, 155 Tex. 249, 285 S.W.2d 184 (1955); *Humble Oil & Ref. Co. v. Atwood*, 150 Tex. 617, 244 S.W.2d 637 (1951); *MacDonald v. Follett*, 142 Tex. 616, 180 S.W.2d 334 (1944); *Gray v. Shelby*, 83 Tex. 405, 18 S.W. 809 (1892); *Stampers v. Johnson*, 3 Tex. 1 (1848); *Ginther v. Taub*, 570 S.W.2d 516, 525 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.). The admission by Manges that the deeds were given as security for performance is sufficient to negate his assertion that no right, title, or interest was conveyed by the deeds.

Respondents also contend that Cove's assertion of an equitable interest was waived in the court of civil appeals. Cove's fourth point of error in the court of civil appeals complained: "The trial court erred in granting Manges' Motion for Summary Judgment in effect holding that the two mineral deeds signed, acknowledged and delivered by the Grantor Manges to the Grantee Cove did not even raise an issue of fact." Cove's ninth point of error was that "The trial court erred in granting the motion for summary judgment in favor of Helen Ruth Manges and Duval County Ranch Company, Inc. and the Bank of the Southwest National Association for the reason that their rights derive from Manges, who was not entitled to summary judgment."

 This court held in *Malooly Bros. v. Napier*, 461 S.W.2d 119 (Tex.1970) that if appellant's points of error attack the summary judgment on specific but incorrect grounds, the judgment must stand since it may have been based on a ground not spe-cifically challenged by the losing party. On the other hand, if the point of error simply complains, "The trial court erred in granting the motion for summary judgment," all grounds expressly raised in the trial court may be argued. Under Tex.R.Civ.P. 166–A, the moving party must show that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law *on the issues as expressly set out* in the motion or in an answer or any other response." (emphasis added).

 Cove's points of error are sufficient to embrace the complaint that the trial court erred in granting the motion for summary judgment because fact issues existed as to the grounds upon which the summary judgment was sought by Manges. *Malooly Bros. v. Napier, supra.* Those fact issues were raised by Cove's motions and responses in the trial court when considered with Manges' motion. Here, it is the failure of the movant to establish his own asserted grounds as a matter of law that made the granting of the summary judgment improper. *MacDonald v. Follett, supra.*

The judgments of the courts below are reversed and the cause is remanded to the trial court for trial.

GARWOOD, J., not sitting.