FALLEN et al. v. WEATHERFORD et al.

(Court of Civil Appeals of Texas. Dallas. June 21, 1913.)

**1. APPEAL AND ERROR (§ 704\*)—CONCLUSIONS OF FACT—CONCLUSIVENESS.**

The conclusions of fact by the trial court are conclusive in the absence of a statement of facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2900, 2939–2941; Dec. Dig. § 704.\*]

**2. REFORMATION OF INSTRUMENTS (§ 13\*) — GROUNDS—MUTUAL MISTAKE.**

A deed which, by mutual mistake of the parties, conveys the entire tract, while intended by the parties to convey only an undivided half interest, will be reformed so as to express the intention of the parties.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 42–60; Dec. Dig. § 13.\*]

**3. EXECUTION (§ 53\*)—PROPERTY SUBJECT TO —UNDIVIDED INTEREST IN REAL ESTATE.**

Where an owner of land incumbered by a vendor's lien agreed to convey an undivided half interest to the grantee, who agreed to pay a specified price and a half of the incumbrance, and by mutual mistake of the parties the entire tract was conveyed, the undivided half interest retained by the owner was subject to execution and sale, and a purchaser at an execution sale acquired an undivided half interest subject to the incumbrance, and subject to the contract between the owner and grantee requiring each to pay one-half of the incumbrance.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 121, 129, 130; Dec. Dig. § 53.\*]

**4. SUBROGATION (§ 17\*)—JUNIOR LIENORS— PAYMENT OF SENIOR INCUMBRANCE—RIGHTS ACQUIRED.**

One who acquired the vendor's lien notes given by the purchaser of an undivided half interest in land incumbered by prior vendor's lien notes which were acquired by the administrator of the deceased purchaser acting individually, and the execution purchaser of the other undivided half interest, could pay the prior vendor's lien notes and thereby become subrogated to the liens of the notes as to the purchaser's half interest, but not as to the undivided half interest acquired by the execution purchaser.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 44–46, 59, 91; Dec. Dig. § 17.\*]

Error to District Court, Dallas County; J. C. Roberts, Judge.

Action by T. A. Fallen and another against C. A. Weatherford and others. There was a judgment for defendants, and plaintiffs bring error. Affirmed.

N. G. Turney and F. D. Cosby, both of Dallas, for plaintiffs in error. Spence, Knight, Baker & Harris, of Dallas, for defendants in error.

RAINEY, C. J. Plaintiffs in error, T. A. Fallen and T. N. Graham, brought this suit, as plaintiffs, in the court below to recover the title and possession of an undivided one-half of a certain tract of land, described in plaintiffs' petition, and to cancel and correct a certain deed to said premises made by J. W. Fallen and wife to H. F. Wiles, January 1, 1910, alleging that said deed was made by said Fallen and wife to Wiles in pursuance of a certain written contract, of date January 1, 1910, wherein said Fallen agreed, for the consideration stated in said contract, to convey to the said Wiles an undivided one-half of said land, but that by mutual mistake of said parties said deed drawn under and in pursuance of said contract conveyed to the said Wiles the whole of said lands, instead of an undivided one-half of the same. Alleging the various trusts under which the said Wiles, now deceased, and those holding under him, held the said lands, and that they are now the owners of the equitable title of the said J. W. Fallen in and to said lands, and further alleging that the equitable title of said J. W. Fallen to said undivided one-half of said lands was not vendible under execution, but that the defendant Cox was claiming the title to the same by virtue of a purchase at a sale made by the sheriff of Dallas county, under an execution issued out of the county court of Ellis county. All the defendants answered in said case; trial was had before the court, waiving a jury, which resulted in a judgment against said plaintiffs and in favor of defendant Cox.

The sole question for decision in this case is: Was the undivided one-half interest of J. W. Fallen in and to the 250 acres of land in controversy subject to levy and sale under execution against him? We think so.

[1] There is no statement of facts in the record, but we find conclusions of fact by the trial judge, which, in the absence of a statement of facts, are conclusive and we adopt the same as the conclusions of this court, as follows:

"Conclusions of Fact.

"1. That on November 1, 1907, R. P. Henry conveyed the lands in controversy to J. W. Fallen for the recited consideration of $4,675.10, paid and to be paid as follows, viz.: $952.75 cash paid, and the execution by J. W. Fallen of five purchase-money notes, each for the sum of $744.47, payable respectively on or before the 1st days of December in the years 1908, 1909, 1910, 1911, and 1912, each bearing 8 per cent. annual interest, and providing for 10 per cent. attorney's fees in usual form, and secured by vendor's lien and deed of trust on the lands, and which said notes are hereinafter called the Henry notes.

"2. That on the 1st day of January, 1910, the said J. W. Fallen and one H. F. Wiles entered into the written contract set out in

---

plaintiff's pleading herein, to the effect, in substance, that said Fallen and his wife should sell and convey, by good and sufficient warranty deed to the said Wiles, a one-half undivided interest in the said lands at the agreed price of $30 per acre, it being stipulated that the amount of the land conveyed by said contract is 125 acres of land by actual measurement; that the total consideration for the 125 acres is $3,750, paid and to be paid as follows, viz.: $895.87 cash, or its equivalent, in hand paid, and by the agreement of Wiles to pay one-half of the amount of the indebtedness then existing on said lands, evidenced by the Henry notes above mentioned, said one-half of such indebtedness being on that date, as recited, $1,861.17. Each party to the contract agreeing to pay his one-half of said lien indebtedness at maturity. And the remainder of the purchase money is evidenced by the execution by Wiles to Fallen of three vendor's lien notes of that date for the sum of $331 each, bearing interest at 8 per cent. from date, and payable respectively on the 1st days of December 1912, 1913, and 1914, hereinafter called the Wiles notes. The said contract further provides for the farming of the said lands by the parties to said contract, and provides how the proceeds derived therefrom shall be divided between them, and provides that the said contract is to remain in force and effect for five years, with no division of the land until the end of that time, at which time, if the contracting parties so desire, they may sell one to the other, or mutually divide the entire tract between them equally.

"3. That pursuant to the terms of this contract a deed of conveyance was on the same date, to wit, January 1, 1910, executed by J. W. Fallen and wife to H. F. Wiles, but by mutual mistake of the parties thereto, and by clerical error, this deed, instead of conveying only the undivided one-half interest in said lands to Wiles, as was intended by all the parties, purported to convey the entire title of the lands to Wiles, but Wiles never claimed any but a half interest in the land, and Fallen always claimed the other half interest in the land up to the time of his sale thereof to the plaintiffs, and the court finds, as stated, that the deed was really intended by all parties thereto to convey only the undivided one-half interest in the lands to Wiles, for the consideration therein recited, which is the same consideration mentioned in the written contract between the parties, which was a part of the same transaction with the making of the deed; said deed retained a vendor's lien to secure the payment of the notes described therein. And J. W. Fallen and H. F. Wiles, up to the time of the latter's death, mutually participated in the management of the farm as provided in the contract between them.

"4. That said H. F. Wiles died intestate, in Dallas county, Tex., on the ―――― day of

May, 1911, and defendant C. A. Weatherford thereafterward was appointed and qualified as administrator of his estate in the county court of Dallas county, Tex., a court of competent jurisdiction, and is now acting as such administrator. That the said H. F. Wiles left surviving him, his widow, the defendant Mrs. H. F. Wiles, and he left as his sole heirs at law, their children, to wit: Nina D. Wiles, Herman O. Wiles, J. P. Wiles, and Cora M. Wiles; said children being minors.

"5. That subsequent to the death of Wiles. the plaintiffs herein purchased, and now own, the Wiles notes with their liens. That plaintiffs have not tendered, and do not now tender, payment of the 'Henry notes.'

"6. That subsequent to the death of Wiles, the defendants A. E. Cox and C. A. Weatherford (the latter acting individually and not as administrator) purchased from R. P. Henry, for full value, and now own the said Henry notes, with all the liens, rights, and titles in and to the said lands, securing the same. This purchase of said notes having been completed, and the liens transferred to them by Henry, on the 31st day of December, 1911.

"7. That the said Henry notes have been presented to C. A. Weatherford, administrator of the estate of H. F. Wiles, deceased, for allowance to the extent of one-half thereof, upon Wiles' assumption of their payment to that extent, and the claim has been allowed and approved by the probate court, in the administration of the Wiles estate, and the claim classified as a third-class claim. This claim was so presented by R. P. Henry, and allowed by the administrator, and approved by the court, before his sale of the said notes to Cox and Weatherford, and the said 'Wiles notes' have been duly presented by the plaintiffs to said administrator, as a claim against the estate of H. F. Wiles, deceased, and have been allowed and approved by the probate court as a claim of the third class against the Wiles estate.

"8. That heretofore, on July 3, 1911, I. Jolesch & Co. obtained a judgment against said J. W. Fallen in county court of Ellis county, Tex., a court of competent jurisdiction, for the principal sum of $412.14, with interest from that date at 10 per cent. per annum, and together with all costs of suit, for which execution was awarded; and pursuant to such judgment, orginal execution was issued to the proper officer of Ellis county, Tex., and was by the same officer who received the same returned nulla bona, and thereafter, in due course, an alias execution was issued on said judgment, addressed to the proper officers of Dallas county, Tex., and was placed in the hands of the sheriff of Dallas county, Tex., who levied by virtue thereof, upon all the right, title, and interest of J. W. Fallen in and to the lands here in controversy, on the 17th day of October,

1911, at 3 o'clock p. m., and, after due advertisement as required by law, and pursuant to such levy and seizure, the said sheriff sold all of the property so levied upon at public outcry at the courthouse door of Dallas county, Tex., on the November sale day, 1911, at which sale the defendant A. E. Cox was the highest and best bidder and the property was struck off to him; that he paid the amount of his bid, to wit, $2,200, to the sheriff, and thereupon the said officer executed a proper sheriff's deed to the said A. E. Cox, thereby conveying to him all the right, title, and interest of J. W. Fallen in and to the lands in controversy. This sheriff's sale was made on the 7th day of November, 1911, within legal hours, and the sheriff's deed to the said A. E. Cox was executed on the same day, and was filed for record in the office of the county clerk of Dallas county, Tex., on the 7th day of November, 1911, at 4:30 o'clock p. m. of said day, and was thereafter duly recorded.

"9. That thereafter, and on the 8th day of November, 1911, the said J. W. Fallen executed to the plaintiffs herein a deed, the consideration in which is recited as follows: $1,845.96, besides the further sum of $871.25 to me paid by T. A. Fallen and T. N. Graham, respectively, as follows: Of the extinguishment of my note for $925 to said T. A. Fallen, or order, dated April 8, 1905, due January 1, 1906, with 6 per cent. per annum from maturity, with credits, and of my note to him for $507.89, dated January 1, 1911, with interest from date at 10 per cent. per annum, and my note to order of said Graham, of June 1, 1911, for $850 with interest thereon at 6 per cent. And the property purporting to be conveyed is as follows:. 'All that certain right, title, interest and claim which I have in and to that land which was described in, and conveyed by, that certain deed executed by myself and my wife to H. F. Wiles, dated January 1, 1910, recorded in Book 526, page 5, Deed Records of said county, made part hereof; and I intend this to be an assignment and conveyance of all said right, title, interest and claim which arose out of my having, by mistake in the drawing of said deed, conveyed all right, title, interest and claim in said land, in its then equitable condition, instead of only one-half thereof, according to the terms of the contract, said mistake being mutual between grantors and grantee in said deed.' This deed was dated and acknowledged November 8, 1911, and filed for record on the same date in the office of the county clerk of Dallas county, Tex., and thereafter duly recorded."

We find no error in the conclusions of law of the lower court, and adopt the same as the conclusions of this court.

## "Conclusions of Law.

"I therefore conclude that as a matter of law, based upon the above findings and conclusions of fact:

[2] "1. That the deed of date January 1, 1910, from J. W. Fallen and wife to H. F. Wiles, as a matter of fact and truth conveyed only an undivided one-half interest in the said lands to H. F. Wiles, and that such deed should be now by this court so reformed as to make it speak the truth and express the real intention of the parties thereto.

[3] "2. That J. W. Fallen retained the title of an undivided one-half interest in said lands (subject only to the R. P. Henry notes and subject to his agreement with H. F. Wiles, of date January 1, 1910) up to the time of the sheriff's said levy and sale thereof to the defendant A. E. Cox.

"3. That J. W. Fallen had said interest in said lands at the date of the sheriff's levy and sale thereof, and that such interest was subject to the execution, levy, and sale against J. W. Fallen, and that the sheriff's deed to Cox conveyed the said interest in said lands to the purchaser, A. E. Cox, who now owns and holds the same, namely, the undivided one-half interest in the lands in controversy, subject only to the lien of the Henry notes, and subject to that portion of the contract between Fallen and Wiles in which it provides that each of them shall pay one-half of said Henry notes.

[4] "4. That plaintiffs have the right to pay off the Henry notes as they own the second vendor's lien on the Wiles' undivided one-half of the land in controversy, and as A. E. Cox, the owner of the other undivided one-half of said lands offers herein to receive payment of his one-half of said notes, but that as plaintiffs have not made actual tender of such payment of said notes, that if payment is made by them, they would not be entitled to be subrogated to any of the liens securing said notes upon the A. E. Cox undivided half interest in the land, but would be subrogated to the liens of said notes as to the Wiles one-half interest therein. That the purported deed from J. W. Fallen to the plaintiffs herein, of date November 8, 1911, conveyed nothing to the plaintiffs.

"5. That judgment and decree should, therefore, be entered reforming said deed from J. W. Fallen and wife to H. F. Wiles, so as to make it speak the true intention of the parties, as aforesaid, and judgment should be entered in behalf of A. E. Cox for the undivided one-half of the lands in controversy, incumbered only as aforesaid, and that plaintiffs take nothing against the said A. E. Cox.

"6. And that the plaintiffs take nothing against A. E. Cox and C. A. Weatherford, either individually or as administrator, on their claims for rents.

"7. That all costs herein, including fee to John W. George, heretofore appointed guardian ad litem to represent the minor defendants herein, in the sum of $100, be taxed and adjudged against the plaintiffs; except the costs of filing the original petition, issuing

and service of citation thereof on C. A. Weatherford, administrator, and the stenographer's fee, and entry of final judgment, which shall be taxed against C. A. Weatherford, administrator."

The judgment is affirmed.