## W. F. DULANEY & SONS v. LAWLER et al. (No. 3145.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 1, 1926. Rehearing Denied Feb. 25, 1926. Dissenting Opinion March 4, 1926.)

1. **Fraudulent conveyances ⏦52(1)—Proof that lands were homestead of grantors precludes their creditor from levying and selling under execution, even though pretended sale to grantee was void and inoperative against owners (Rev. St. 1911, art. 4643).**

In suit under Rev. St. 1911, art. 4643, by grantee to prevent cloud being put on title to land by being sold under execution by creditor of grantors, proof that lands were grantors' homestead would preclude creditor from levying and selling under execution even though pretended sale to grantee was void and inoperative against owners.

2. **Fraudulent conveyances ⏦52(1).**

Sale of homestead is not fraudulent as to creditors.

3. **Fraudulent conveyances ⏦52(1)—Grantee holding bare title of record for purpose of securing loan on homestead for owner may assert right against execution on property by grantors' creditors; defense of illegal mortgage of homestead not being available to creditors (Rev. St. 1911, art. 4643).**

In suit under Rev. St. 1911, art. 4643, to prevent cloud on title by being sold under execution by grantors' creditors, grantee holding bare title by deed of record for purpose of obtaining loan on homestead for owner may assert right against execution; defense of illegal mortgage of homestead not being available to creditors.

4. **Fraudulent conveyances ⏦52(3).**

Grantee obtaining deed under circumstances amounting to fraudulent conveyance cannot hold excess over grantor's homestead limitation against execution by grantor's creditor.

Hodges, J., dissenting.

Appeal from District Court, Lamar County; Newman Phillips, Judge.

Suit by G. T. Lawler against W. F. Dulaney & Sons. From a judgment granting a permanent injunction, defendants Dulaney & Sons appeal. Affirmed.

The appellee G. T. Lawler applied for an injunction to restrain the sale of certain tracts of land upon which the sheriff had levied execution in favor of W. F. Dulaney & Sons, and against A. C., T. L., and D. I. Vickers. W. F. Dulaney & Sons, a partnership, and the sheriff of the county were the parties defendant. A temporary writ was first granted by the court, and on trial made permanent. The petition alleged that on February 9, 1922, W. F. Dulaney & Sons obtained a personal judgment against A. C., T. L., and D. I. Vickers in the district court of Lamar county, and that thereafter the sheriff levied an execution on the lands in suit as the property of the judgment defendants; that at the time of the judgment and the levy, and long prior thereto, the two tracts of land levied on, were on the homestead of A. C. and D. I. Vickers, and was used and occupied by them as such; that on December 15, 1921, D. I. Vickers, joined by his wife, for a valuable consideration conveyed his homestead tract to plaintiff Lawler; that on January 27, 1922, A. C. Vickers, joined by his wife, for a valuable consideration conveyed his homestead tract to plaintiff Lawler; that the plaintiff Lawler, prior to the date of the judgment and to the levy of the execution, and at the time of the application for injunction, was "the owner of the real estate levied on"; that the levy upon and sale of the land under an execution against A. C. and D. I. Vickers, they having no interest in the land, would "cast a cloud upon this plaintiff's title"; and "that he has no adequate remedy at law to prevent said wrong, injury, and damage being inflicted upon him and the title to his property."

The defendants Dulaney & Sons answered as follows:

"They deny that said property was conveyed by A. C. Vickers and D. I. Vickers by bona fide sale with delivery of deed and of the property. They say that said transfers so averred were for the purpose of borrowing money and of defeating the defendants in the collection of their judgment. The defendants allege that the plaintiff G. T. Lawler has never claimed said property as his own until the filing of this suit, and has not rendered the same for taxes; said property has been rendered for taxes by D. I. Vickers and A. C. Vickers as their own and in their names, and they have used, occupied, and enjoyed the same as their own, collecting rents therefrom regularly since the pretended sale; that plaintiff is asserting a right to said lands now for the benefit of D. I. and A. C. Vickers, the true owners; that D. I. and A. C. Vickers each own other property which they are now claiming as a homestead, and which they owned at the time of the pretended sale and the levy of this execution."

It was proven that the alleged judgment was duly recovered by Dulaney & Sons against A. C. and D. I. Vickers, and that it is subsisting and unsatisfied, and that the execution was regularly issued and a levy was made upon the lands by the sheriff, and that he had advertised it for sale. The deeds from the Vickerses to G. T. Lawler were offered in evidence by the plaintiff. The deed from D. I. Vickers and wife recited the consideration of "seventeen hundred dollars paid by G. T. Lawler, and the said Lawler's promissory notes, viz., No. 1 for $9,000, No. 2 for $1,000, No. 3 for $2,000, and No. 4 for $1,000, all bearing interest at the rate of 8 per cent.," etc.

A vendor's lien was expressly retained.

The deed from A. C. Vickers recited the consideration of $5 paid by G. T. Lawler, and one note of even date for the sum of $5,000, etc. A vendor's lien was expressly retained. The deeds were shown to have been duly registered in the clerk's office. The deed from D. I. Vickers and wife conveyed "202½ acres of land, more or less," a part of the Jane Crowder survey, specially setting out the metes and bounds. The said tract seems to contain an excess above 200 acres. The deed from A. C. Vickers and wife conveyed "108.74 acres, more or less, of the Jane Crowder survey," specially described by metes and bounds. A. C. Vickers was offered as a witness by the plaintiff, and he was the only witness testifying in the case. He testified, as material to state, that:

"I am a married man, and have been married 23 years. D. I. Vickers is my brother, and he is a married man and has been married for 12 years or more. I have resided on that place continuously from that time on up to the present time. I know that D. I. Vickers lived on the land with his family, and that he and I cultivated the land. We have cultivated the better part of it since we bought it. We have claimed that property as our homestead. We are both married men, and both of us owned, used, occupied, and cultivated the same as our homestead. I did not have ony other land at that time, and neither did D. I. Vickers."

On cross-examination he testified:

"At the time the deeds were made I lived on the place. I live on the place now, and have never moved off of it. I have not paid Mr. Lawler any rent for the land. I have paid the taxes and rendered it for taxes every year in our name (the Vickerses). The management of the land has not changed a particle since the deeds were made; Mr. Lawler has not paid any interest on the notes—he has not paid a cent. In making the deeds we did transfer the title, but I did not mean for Mr. Lawler to take the land under the deed. It was my homestead. We did deed the land to Mr. Lawler, and we did put it on record. To be honest with you, I did not intend for him to take the land under the deed which we put on record. I have never delivered him the land, and the deeds were made in order to get a loan. This sale was made just for the purpose of getting a loan. The land has never been deeded back to us. He understood and we all understood that he was not to get the land. He paid us no cash as called for in the deed. The deeds were drawn for the purpose of selling the notes and getting a loan on the land. * * * At the time we deeded the land to Mr. Lawler we had no intention of deeding it to him for the purpose of placing it beyond the reach of Mr. Dulaney or any other creditor. I deeded it as a homestead, and I thought it was beyond the reach of any creditor."

No other evidence was offered by the parties.

Upon the above evidence the court gave the following peremptory charge to the jury:

"The uncontroverted evidence shows that the lands in suit constituted the homestead of A. C. and D. I. Vickers. The homestead being exempt from payment of debts, the defendants cannot subject the lands to the payment of their judgment, and you will therefore return a verdict in favor of the plaintiff."

In accordance with the instruction, the jury returned a verdict "for the plaintiff." In keeping with the verdict the court entered judgment perpetually restraining the sale of the land under execution.

Tom L. Beauchampp and W. Dewey Lawrence, both of Paris, for appellant.

Patrick & Eubank, of Paris, for appellees.

LEVY, J. (after stating the facts as above). [1-4] The appellant insists that under the evidence the applicant for injunction was not entitled thereto under the terms of the statute, and therefore the court should have denied, instead of allowing, the relief demanded by him. The petition sought to prevent a cloud being put upon the the title to the land by being sold under execution. Rev. St. 1911, art. 4643. There can scarcely be a doubt, from the testimony presented to the court, that the lands in suit constituted the homestead of A. C. Vickers and of D. I. Vickers. The proof that the lands constituted the Vickerses' homestead would legally preclude the appellant from levying upon the same and selling it under their execution. The sale of the homestead is not fraudulent as to creditors. Consequently the appellants had no substantial right as to the homestead tracts, even though there be a pretended sale to appellee legally void and inoperative as against the homestead owners. It is immaterial that the homestead owners are not before the court asking a cancellation of the deeds; that the appellee holding the bare title by a deed of record is in some legal position to the property to assert a right as against the execution. The defense of illegal mortgage of the homestead is not available to the mere creditor. However, it seems to appear that there is an excess of land above 200 acres in the homestead tract of D. I. Vickers and wife. Such excess would be subject to the execution in suit unless the appellee acquired same by the deeds under circumstances not amounting to a fraudulent conveyance, legally speaking, as against creditors of the Vickerses. That the appellee could not legally hold the excess as against the execution of appellants is plain, in view of the evidence appearing in the present record. For this reason there was error in rendering judgment in favor of appellee, perpetually restraining the execution, without any modification or limitation. The proof, however, respecting the excess is too meager and indefinite upon which to found a judicial finding here, and therefore the cause will have to be remanded. Accordingly the

judgment is reversed and the cause remanded.

Justice Hodges, however, is of the opinion that the judgment ought to be remanded, with instructions to dismiss the application upon the ground that. the applicant Lawler has shown no interest in the property that is the subject-matter of injunction.

### On Rehearing.

The motion of appellees is to the effect that, considering the several conveyances in evidence in connection with other facts, the ·trial court was authorized to find, as involved in the judgment, that there was in point of fact no excess of land above the homestead of the parties. We think the contention is correct. Therefore the judgment is affirmed, instead of reversed as heretofore determined.

HODGES, J. (dissenting). As has been previously stated by Justice LEVY, this is an original application by Lawler to enjoin the sale of two tracts of land which had been levied on as the property of D. I. and A. C. Vickers. The plaintiff below alleged that he was the owner of the land, and that a sale under the execution would cast a cloud upon his title. It was upon that ground alone that he sought the injunction to prevent the ·sale. He especially pleaded his title through two separate conveyances from D. I. and A. C. Vickers, alleging the payment of a valuable consideration. One tract, he stated was acquired by him on November 15, 1921, and the other in July of 1922. Both of these conveyances were made prior to the rendition of the judgment against the Vickerses upon which the execution was issued. He further alleged that prior to the conveyances made to him the land had been occupied by D. I. and A. C. Vickers as their homestead.

The appellants answered, pleading, in substance, the judgment previously recovered against the Vickerses, and the issuance of the execution. They denied that Lawler was the owner of the land, and charged that the conveyance to him was a device and a sham and for the purpose of defeating the debt against the Vickerses. They further alleged that the two tracts of land levied upon were conveyed to Lawler merely for the purpose of enabling D. I. and A. C. Vickers to secure a loan; that Lawler had never claimed to own the property prior to the filing of his suit; had never rendered it for taxation, or exercised any acts of ownership over it; that the land had been regularly rendered for taxation and the taxes paid by D. I. and A. C. Vickers as their property; and that they had continuously used and occupied the land, collecting the rents, and otherwise exercising the dominion of true owners.. They also alleged that D. I. and A. C. Vickers owned other lands which they were then claiming as their homesteads. No reply was filed by Lawler to this answer. At the conclusion of the evidence the court directed a verdict in favor of Lawler.

The judgment rendered must rest upon one or the other of the following legal conclusions: (1) That it conclusively appeared that Lawler was the real owner of the land, and for :that reason it was not subject to the writ; or (2) that· D. I. and· A. C. Vickers were the owners and the land was their homestead at the time the writ was levied.

The first question, then, is:· Who was the owner of the land, Lawler or the Vickerses? The only evidence of Lawler's ownership is furnished by the deeds under which he claims. These upon their face appear to be absolute conveyances, and, of course, make a prima facie case of ownership. But it was conclusively shown that the transactions out of which they grew were only pretended sales, and that the deeds were never intended to convey the ownership of the property to Lawler. The execution of the deeds by the Vickerses and the notes by Lawler was only a scheme for securing a loan. The only witness who testified on the trial was A. C. Vickers, called to the stand by Lawler. In his direct examination this witness testified as to when and from whom he and his brother acquired the two tracts of land. He also stated in that connection that up to the time of the conveyances to Lawler they had been occupying the land as their homestead. They had resided¹ upon the land from the time it was acquired until the time of the trial. Lawler was their brother-in-law. D. I. and A. C. Vickers were partners, and had cultivated and used the land continuously since its purchase. On cross-examination the latter said:

"At the time the deeds were made I lived on the place, and I live on the place now. I have never moved off of it. I have not paid Mr. Lawler any rent for this land. I have paid the taxes and rendered it for taxes every year in our name. Since the deeds were made the management of the land has not changed a particle. Mr. Lawler has not paid me any interest on these notes. He has not paid me a cent. In making the deeds we did transfer the title. I did not mean for Lawler to take the land under the deed. It was my homestead. We did convey the land to Mr. Lawler, and we put it on record. To be honest with you, I did not intend for him to take the land under that deed I have on record. I have never delivered him the land. These deeds were made in order to get a loan. Before this deed was made to my sister I owned an interest in the 280 acres of land. I did not own the 108 acres that I conveyed to my sister besides that. I did not own any land except my interest in the 280 acres. * * * I said this sale was made just for the purpose of getting a loan. The land has never been deeded back to us. Lawler has never signed a deed back to us. Nevertheless, he understood, and I understood, and we all understood that he was not to get the land. He paid us no cash as called for in the deed. The deeds were drawn for the purpose of selling the notes

and getting a loan on the land. One of the deeds called for $17,000 cash besides the notes. Mr. Lawler did not pay that cash. He did not pay any other cash consideration. When I deeded it to my sister she did not pay the cash consideration at all. It was for the purpose of creating these notes."

On redirect examination he testified:

"We deeded the land to Lawler for the purpose of getting a loan on it, for the purpose of getting money on the homestead for repairs and to keep up the farm. We deeded the homestead to him for the purpose of getting a loan to make repairs on it. At the time we deeded the land to Lawler we had no intention of deeding it to him for the purpose of placing it beyond the reach of Dulaney or any other creditors. I deeded it as à homestead. I thought it was beyond the reach of my creditors."

If this testimony be true, and in this appeal it must be taken as true, the land was the homestead of the Vickerses when conveyed, and the conveyance to Lawler was only a pretended sale for a purpose which the Constitution forbids. Constitution, section 50 of article 16, among other things, says: "And all pretended sales of the homestead involving any condition of defeasance shall be void." Sham sales of this character are clearly within the meaning of that provision. Sanger Bros. v. Brooks, 105 S. W. 37, 101 Tex. 115; Gray v. Shelby, 18 S. W. 809, 83 Tex. 405. Lawler therefore had no title which a sale under the execution would cloud. At most he held only a legal title in trust for Vickers, who still owned the real beneficial equitable interest. That such an equitable interest may be levied upon and sold under execution against the owner is established by the following cases: Hirshfield v. Howard (Tex. Civ. App.) 60 S. W. 806; Fallen v. Weatherford (Tex. Civ. App.) 158 S. W. 1174; Peeples v. Slayden-Kirksey Co. (Tex. Civ. App.) 90 S. W. 61. A sale of the equitable interest of Vickers could not cast a cloud upon the naked legal title of Lawler, for the purchaser under an execution sale would acquire only the Vickerses' interest. Therefore Lawler's suit is without merit. The burden rested upon him to prove the character of ownership which he alleged. Conceding that as trustee for the Vickerses he might have secured the injunctive relief for the benefit of the latter, the answer is that he made no such effort. In order for a trustee to recover a judgment in that capacity he must plead as well as prove his fiduciary relation and the facts which warrant the relief sought. No such pleading appears in this case. Lawler's suit is founded alone upon a fee-simple title and full ownership in himself.

The next question is, was the land the property of the Vickers? I understand from the opinion disposing of this appeal that the judgment of the trial court was affirmed upon the conclusion that the real beneficial interest was still owned by the Vickerses, and that it was not subject to the writ because it was their homestead at the time of the levy. The finding that the land was the homestead of the Vickerses negatives the fact that it was the property of Lawler. If the land did not belong to Lawler in the right alleged by him, then his pleadings were not sustained by the evidence, and no judgment could have been rendered in his favor. Lawler did not plead an existing homestead right in the Vickerses. On the contrary, he pleaded that the Vickerses had theretofore parted with the title, thereby implying that their homestead rights ceased on the dates of the conveyances to him. The last of those conveyances was dated more than a year prior to the filing of his application for the injunction. The Vickerses might thereafter have abandoned the land as their homesteads. If the sale was void when made to Lawler for the avowed purpose of evading the constitutional inhibitions, the subsequent abandonment of the property by the Vickerses would not validate the conveyances. Hoefling et al. v. Thulemeyer et al. (Tex. Civ. App.) 142 S. W. 103; Zwernemann v. Von Rosenburg, 13 S. W. 485, 76 Tex. 522; Lacy v. Lockett, 17 S. W. 916, 82 Tex. 190. The same result would follow if the deeds were executed with the distinct understanding that no rights were to pass. It may be asked, can appellants, as creditors of the Vickerses, set up the invalidity of the conveyances from the Vickerses to Lawler? They can, in the absence of any pleading and proof, that the property is still the homestead of the Vickerses and exempt from forced sale. There is nothing in the pleadings of Lawler claiming a present homestead right in any one, and the Vickerses are not parties to the suit. Moreover, A. C. Vickers, the only witness to testify upon the trial, did not state that he and his brother were then claiming a homestead interest in all of the land levied upon. Appellants had alleged in their answer that the Vickerses owned other lands which they were claiming as their homestead, and this was not denied.

But even if the proof in this case did show that it was the existing homestead of the Vickerses at the time of the levy of the writ, such proof cannot be considered in the absence of appropriate pleadings. "Facts, not alleged though proved, cannot constitute the basis of an adjudication." Hall v. Jackson, 3 Tex. 311; Paul v. Perez, 7 Tex. 338; McKinney v. Fort, 10 Tex. 234; Denison v. League, 16 Tex. 408; Middlebrook Bros. v. Zapp, 10 S. W. 732, 73 Tex. 29; Cooper v. Loughlin, 13 S. W. 37, 75 Tex. 524; G. H. & S. A. Ry. Co. v. Scott, 44 S. W. 589, 18 Tex. Civ. App. 321.

My conclusion is, the judgment of the trial court should be reversed and the application for the injunction refused, because it conclusively appears from the evidence that

Lawler would sustain no injury by the levy of the writ, and was therefore not entitled to the relief prayed for. No other relief was sought.